UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 APR 13 P 3: 20

U.S. DISTRICT COURT
HARTFORD, CT.

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,
    Plaintiff,

VS.

CLAUDETTE ESPACH AS
ADMINISTRATRIX OF THE ESTATE
OF MICHAEL ESPACH, ANDREW
CONWAY, ROGER CONWAY, ANDREA
CONWAY AND MAUREEN DEVINE,
    Defendant.

Civil No. 3:02CV639 (AVC)

### RULING ON THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is an action for declaratory judgment brought in connection with an automobile liability insurance policy. The plaintiff, Metropolitan Property and Casualty Insurance Company ("Metropolitan") seeks a declaration that it is under no duty to defend or indemnify the defendant, Claudette Espach, in a state superior court action filed against her as the administratrix of the estate of her deceased son, Michael Espach. The plaintiff in the state court action is one Andrew Conway, who was injured in a one car motor vehicle accident in which Michael Espach was the operator.

The issue presented is whether at the time of the accident, Michael Espach was qualified as an insured under the Metropolitan insurance policy issued to Claudette Espach. For the reasons hereinafter set forth, the court concludes that Michael Espach was not a qualified insured and accordingly, Metropolitan is under no duty to defend or indemnify Claudette Espach in the state superior court action. The motion for summary judgment is therefore granted.

**FACTS**

Examination of the complaint, affidavits, pleadings, Rule 7(c) statements and exhibits accompanying the motion for summary judgment, and the responses thereto, disclose the following undisputed, material facts.

1. <u>The Accident</u>

On October 3, 1998, Maureen Devine ("Maureen") gave permission to her 16 year old brother, Colin, to drive her 1986 Nissan Maxima automobile ("the vehicle") to the Trumbull Center to purchase food for an anniversary party that she had planned for that evening for her parents. Colin had just received his driver's license that year. Prior to this time, Colin never drove Maureen's vehicle and never let any of his friends use the vehicle. Colin thereafter completed the errand and returned home. He did not, however, return the car keys to Maureen, and Maureen did not ask for them.

At or around 6:00 pm, guests began arriving at the Devine home for the anniversary party, including Colin's 16 year old friend, Andrew Conway ("Andrew"). The party lasted until approximately 11:00 pm. During the party, Colin and Andrew took Maureen's vehicle around the block at least once. Maureen was present at the party, but there is no evidence that Maureen had personal knowledge that Andrew and Colin had taken her vehicle. Between 12:45 am and 1:15 am, Colin and Andrew decided to leave the Devine home and drive Maureen's vehicle to the Ruiz residence where one Michael Espach ("Michael") was expected to return after

2

attending a concert in Hartford. Because Colin had been drinking at the anniversary party, Colin agreed that Andrew would drive. Neither Colin nor Andrew asked Maureen if they could use her vehicle. When they arrived at the Ruiz residence, no one was there and so the boys returned to the Devine home.

At or around 2:00 am on October 4, 1998, Andrew and Colin left the Devine home for a second time in Maureen's vehicle, drove to the Ruiz residence, and there found Michael. The three boys then returned to the Devine home and, within ten minutes, decided to visit a Dunkin Donuts. At this time, the boys decided that Michael would drive Maureen's vehicle. Michael did not have a driver's license though he did possess a learner's permit. Under Connecticut law, Michael was only allowed to operate a motor vehicle with an individual 20 years old or older who has been licensed to operate a vehicle for a least 4 years. See Conn. Gen. Stat. § 14-36(c)(2). Michael did not ask Maureen for permission to drive her vehicle. On the return trip from Dunkin Donuts, Michael lost control of the vehicle and hit a tree. The crash killed Michael, and injured Andrew and Colin.

2. <u>The Insurance Policy</u>

At the time of the October 4, 1998 accident, the defendant, Claudette Espach, was insured under a personal automobile policy No. 0414662560 issued by Metropolitan. Section II of the policy, entitled "Automobile Liability Coverage," provides:

> We will pay damages for bodily injury and property damage to others for which the law holds an insured responsible because of an

3

occurrence which results from the ownership, maintenance or use of a covered automobile or a non-owned automobile. We will defend the insured, at our expense with attorneys of our choice, against any suit or claim seeking these damages. We may investigate, negotiate or settle any such suit or claim.

Section VI of the policy, entitled "General Definitions" set forth the following relevant definitions:

"Insured" means:

(b) with respect to an non-owned automobile:

    i. You; or

    ii. Any relative but only with respect to a private passenger automobile, utility automobile, or utility trailer. <u>The actual operation or use of such a vehicle must have been with the permission of, or reasonably believed to have been with the permission of, the owner</u>. The operation and use must have also have been within the scope of the permission given.

"Non-owned automobile" means an automobile which is neither owned by, furnished to, nor made available for regular use to you or any resident in your household. This does not include a substitute automobile. A utility trailer when used with a non-owned automobile is covered except with respect to SECTION V, PHYSICAL DAMAGE COVERAGE.

"Relative" means a person related to you by blood, marriage or adoption, and who also resides in your household. Your unmarried and emancipated children, while away from your household attending school or in active military service, are considered residents of your household.

"You" and "your" mean the person or persons named in the Declarations of this policy as named insured and the spouse of such person or persons if a resident of the same household.

## **STANDARD**

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. See Bryant v. Maffacci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 112 S. Ct. 152 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Liberty Lobby, supra, at 247-48 (emphasis original). The Supreme Court has noted that:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Celotex v. Catrett, 477 U.S. 317, 327 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims. . .[and] it should be interpreted in a way that allows it to accomplish this purpose."

<u>Celotex v. Catrett</u>, 477 U.S. 317, 323-324 (1986).

"It is the function of the court to construe the provisions of the insurance contract and, if no material facts are at issue, the question of whether coverage exists is a question of law that is appropriately decided on a motion for summary judgment." <u>Peerless Ins. Co. v. Disla</u>, 999 F. Supp. 261, 263 (D. Conn. 1998) (<u>citing</u> <u>Jurrius v. Maccabees Mut. Life Ins. Co.</u>, 587 F. Supp. 1301, 1305 (D. Conn. 1984)).

## DISCUSSION

Metropolitan moves for judgment as a matter of law on its claim that, under the provisions of the automobile policy, Metropolitan is under no duty to defend or indemnify the defendant in the action filed against her by Andrew Conway, who was injured in the car accident in which her son Michael was the operator. In Metropolitan's view, because Michael was operating an automobile of which he did not own, coverage is not authorized because he did not receive permission of the owner, Maureen Devine, to operate her vehicle.

In response, the defendant maintains that judgment as a matter of law in inappropriate because, at the time of the accident, Michael had "implied permission to operate [Maureen's vehicle] as well as a reasonable belief that he had her permission."

1. <u>Implied Permission</u>

Under Section VI of the policy, Metropolitan is liable to defend and indemnify the defendant, Claudette Espach, if at the

6

time of the accident, Maureen Devine, the owner of the vehicle, gave Michael Espach permission to use the vehicle. In particular, that section states that:

> "Insured" means:
>
> (b) with respect to an non-owned automobile:
>
>   i.  You; or
>
>   ii. Any relative but only with respect to a private passenger automobile, utility automobile, or utility trailer. <u>The actual operation or use of such a vehicle must have been with the permission of, or reasonably believed to have been with the permission of, the owner</u>. The operation and use must have also have been within the scope of the permission given.

Because the language of the insurance policy does not limit such permission to that which is expressed and specific, actual permission may be "implied from a course of conduct known to and acquiesced in by the named insured." <u>Tomasetti v. Maryland Casualty Co.</u>, 117 Conn. 505, 507, 169 A. 54 (Conn. 1933). Implied permission may be found where there is a course of conduct consisting of a "prolonged, frequent, and habitual use [of the subject vehicle where the owner] was with knowledge and acquiescence." <u>Id.</u> at 508. Moreover, an owner's grant of permission to one person may be broad enough so as to authorize that person to grant permission to a third party to operate the vehicle. <u>Id.</u> at 509.

In this case, there is no evidence of prolonged, frequent, or habitual use of the subject vehicle by Colin or his friend

7

Michael that was with the knowledge and acquiescence of Maureen. Rather, there is simply one example where Maureen expressly gave her brother Colin permission to use the subject vehicle on the day preceding the accident. Such limited evidence does not raise a genuine issue material fact that Maureen, who was sleeping at the time of accident, implicitly gave Colin permission to use her vehicle in the early morning of October 4, 1998. Because there is no support for the conclusion that Colin had implied permission to use Maureen's vehicle, Colin was without authority to permit Michael to operate the vehicle.

2.   Reasonable Belief

Under Section VI of the policy, Metropolitan is also liable to defend and indemnify the defendant, Claudette Espach, if at the time of the accident, Michael Espach,

> reasonably believed [that he had] permission of, the owner [to operate The vehicle].

Section VI (emphasis added). In determining whether such a "reasonable belief" existed at the time of the accident, the court must examine whether the driver subjectively believed that he had the owner's permission to drive the vehicle, and if so, whether that belief was objectively reasonable. Nicholas v. Amica Mut. Ins. Co., No. CV94047942, 2002 WL 845697, *7 (Conn.Super. Ct. April 4, 2002). In determining whether the driver's belief was objectively reasonable, the court looks to:

> 1) whether the driver had express permission to use the vehicle; 2) whether the driver's use of the vehicle

8

>
> exceeded the permission granted; 3) whether the driver was `legally' entitled to drive under the laws of the applicable state; 4) whether the driver had any ownership or possessory right to the vehicle; and 5) whether there was some form of relationship between the driver and the insured, or one authorized act on behalf of the insured, that would have caused the driver to believe he was entitled to drive the vehicle.

Nicholas v. Amica Mut. Ins. Co., 2002 WL 845697, at *7 (citing General Accident Fire & Life Assurance Corp. Ltd. v. Perry, 75 Md.App.503, 525, 541 A.2d 1340, 1350 (1988)).

Applying these factors, the court concludes that even if Michael had a subjective belief at the time of the accident that he had Maureen's permission to operate the vehicle, such a belief would not have been objectively reasonable. In this regard, Michael did not have Maureen's express permission to operate the vehicle. Michael did not have a driver's license. He simply held a learner's permit and therefore was not legally authorized to operate any vehicle under the circumstances presented here, that is, when accompanied only by two other 16 year old boys. Michael did not have any possessory interest in the vehicle, and was without any special relationship that would have caused him to believe that Maureen would have authorized his illegal operation of her vehicle. Accordingly, the court concludes that Michael did not have a reasonable belief, at the time of the accident, that he had Maureen's permission to operate the vehicle.

## CONCLUSION

For the foregoing reasons, Metropolitan's motion for summary judgment is GRANTED (document no. 29). The court awards Metropolitan a declaration that it is under no duty to defend or indemnify the defendant, Claudette Espach, in a state superior court action filed against her as the administratrix of the estate of her deceased son, Michael Espach.

It is so ordered, this 12th day of April, 2004, at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge